UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al.,

Plaintiffs,

v. Case No. 8:12-cv-1325-T-33MAP

SUNTRUST BANK,

Defendant.
_______________________________/

**ORDER**

This matter comes before the Court pursuant to Plaintiffs' Joint Motion and Incorporated Memorandum of Law to Strike Defendant SunTrust Bank's Exhibits "O," "S," "U," and "C," and in the Alternative, Motion to Exclude Exhibit "C" Pursuant to Federal Rule of Civil Procedure 37 (Doc. # 143), which was filed on November 22, 2013. SunTrust filed a Response in Opposition to the Motion on December 9, 2013. (Doc. # 154). The Court grants the Motion as specified herein.

## I. Background

### A. Marcia Vescio

Marcia Vescio was employed at SunTrust's Gulf Gate branch from May of 2006, through November of 2009, as a Financial Services Representative. (Doc. # 18 at ¶¶ 26-27). Kenneth

Sisson supervised Vescio and began working at SunTrust as a Branch Manager on November 17, 2008. (Vescio Decl. Doc. # 124-4 at ¶ 4; Doc. # 83-3 at 1). According to Vescio, Sisson stared at her breasts every other day and trapped her between his groin area and the bank teller's counter by standing inches behind her. (Vescio Decl. Doc. # 124-4 at ¶¶ 15, 21). Vescio testified that Sisson stood so close behind her that she "was constantly afraid that one day his penis was going to touch [her] because he was always so close." (Id. at ¶ 26). In these situations, Vescio contends that Sisson spoke with his mouth so close to her body that she could feel his breath on her neck. (Id.).

Vescio also indicates that Sisson said, "I wish you had legs like that" comparing her to a bank customer who was also a Hooters waitress. (Vescio Dep. Doc. # 124-3 at 122). Vescio also alleges that while Sisson was touching her shoulder and standing uncomfortably close to her, he commented "just between me and you, I love Brazilians." (Vescio Decl. Doc. # 124-4 at ¶ 5). In addition, Vescio alleges that Sisson humiliated her by frequently directing her to say the word "peanuts" because, with her Brazilian accent, it sounded like she was saying "penis." (Id. at ¶ 23). Vescio testified that Sisson's conduct "always" brought her to tears. (Vescio Dep.

Doc. # 124-3 at 282). Vescio's employment was terminated on November 17, 2009. (Doc. # 141-14 at 3).

**B. Heather Caldwell**

Heather Caldwell began her employment at SunTrust's Gulf Gate branch on April 23, 2007, and was supervised by Sisson after he came to the branch. (Doc. # 141-14 at 1). Caldwell alleges that Sisson made inappropriate comments to her, for instance, remarking after she lost weight from running that she was "losing" her "ass" and making comments about her legs as well as about Hooters waitresses. (Caldwell Dep. Doc. # 125-7 at 38, 41, 42, 150). He allegedly told Caldwell that she would get more accounts if she donned the attire of a Hooters waitress. (Id. at 149). Caldwell also contends that Sisson stared at her chest. (Id. at 47).

Caldwell spoke to Branch Manager Denise McDonald about Sisson's inappropriate, sexual behavior on a weekly or daily basis between January 2009, and August 2009. (Id. at 133-37). Caldwell also reported to Branch Manager Erin Hall that Sisson was using sexually inappropriate language. (Id. at 144-45). Finally, Caldwell reported "sexual harassment" to Area Manager Kevin Osborne, while "bawling her eyes out." (Id. at 124-28). Caldwell resigned from her position at SunTrust on August 14, 2009. (Doc. # 141-14 at 1).

**C. Jena Lynch**

Jena Lynch began her employment as a teller at SunTrust's Southgate branch in February of 2008. (Lynch Decl. Doc. # 124-2 at ¶¶ 4, 6). In January of 2009, Lynch was transferred to the Gulf Gate branch. (Id. at ¶ 6). Only 20-years old at the time, Lynch contends that Sisson, her 40-year old supervisor, made several offensive remarks to her, frequently stared at her in a sexual way, and, on a daily basis, would trap her behind the teller counter by standing less than two inches from her backside. (Id. at ¶¶ 9-14, 21-23, 26). She explained that she could not move forward because of the teller counter and she could not move backwards because she did not want to back up into his groin area. (Id. at ¶¶ 10, 12). During these times, Lynch contends that Sisson would speak with his face right next to hers so that she could feel his breath on her face. (Id. at ¶ 11). In contrast, Lynch remarked that Sisson stood a respectable distance from male employees. (Id. at ¶ 19).

Lynch testified that Sisson's conduct made her feel "sick at the prospect of going to work," "trapped," "cornered," "physically threatened," "extremely distressed, anxious, and embarrassed." (Id. at ¶¶ 11-13, 49). Lynch was terminated on July 10, 2010. (Doc. # 141-14 at 4).

**D. Delia Timaru-Paradis**

Delia Timaru-Paradis began working for SunTrust as a Financial Services Representative in October of 2008, and was transferred to the Gulf Gate branch in September of 2009. (Timaru-Paradis Decl. Doc. # 126-1 at ¶¶ 3, 9). Sisson was Timaru-Paradis' supervisor and, according to Timaru-Paradis, he made inappropriate comments to her, for instance, suggesting that she wear a bathing suit to work to attract customers. (Id. at ¶¶ 14-15). She also alleges that he constantly made comments about her backside and remarked, after she gained weight: "You finally have some meat on your ass." (Id. at ¶ 38). According to Timaru-Paradis, he also asked her about her sex life "on a weekly if not daily basis," and stared at her breasts on an almost daily basis. (Id. at ¶¶ 25, 42). She also claims that Sisson threatened "maybe tomorrow you will not be back to your job" when she declined his invitation to go out to dinner with him. (Id. at ¶ 35).

Timaru-Paradis reported to her immediate supervisor Tunde Kakucs that Sisson would touch her inappropriately on a daily basis. (Id. at ¶ 26). According to Timaru-Paradis' declaration, Sisson "touch[ed]," "patt[ed]," "caressed," "grab[bed]" and "fondled" her body parts, including her hair, face, ears, neck, shoulders, back, arms, thighs, and

buttocks. (Id. at ¶¶ 25-33, 37-38). One evening in May of 2010, Sisson allegedly followed Timaru-Paradis to her car, "grabbed [her] forcefully and held [her] against [her] will." (Id. ¶ 59). He kissed her and she "had to shove him with all of [her] might to get away from him." (Id.).

Timaru-Paradis testified that Sisson's alleged verbal and physical harassment made her feel "dirty and disgusted," "horrified," "shocked," "extremely uncomfortable," and "physically threatened." (Id. at ¶¶ 29-30, 33, 38, 48).

When she reported Sisson's conduct to Area Manager Osborne, he allegedly remarked: "Quite frankly, you are frustrating me right now. And you should remember who . . . is giving you your paycheck." (Id. at ¶ 60). On July 7, 2010, Timaru-Paradis was terminated. (Doc. # 141-14 at 2).

**II. Complaint**

On June 14, 2012, the EEOC filed a Title VII sexual harassment action against SunTrust on behalf of "charging parties" Timaru-Paradis, Vescio, and Lynch. (Doc. # 1). In August of 2012, Timaru-Paradis, Vescio, and Caldwell filed Motions to Intervene in this action with the assistance of separate counsel (Doc. ## 5-7), which the Court granted. (Doc. # 13). In granting the Motions to Intervene, the Court

directed that the EEOC and Intervening Plaintiffs file a consolidated complaint. (Id.).

On October 15, 2012, the EEOC, Lynch, Caldwell, Vescio, and Timaru-Paradis filed an Amended Consolidated Complaint (Doc. # 15), and thereafter filed a Second Amended Consolidated Complaint against SunTrust. (Doc. # 18). At this juncture, Caldwell has dismissed all of her claims with prejudice (Doc. # 122), and the parties have internally resolved a number of claims (Doc. # 103), leaving the following claims outstanding:

> **Lynch**: Title VII hostile work environment based on sex;
> **Vescio:** Title VII employment discrimination based on sex; Title VII hostile work environment based on sex; Title VII national origin discrimination; Title VII retaliation for opposing sex and national origin discrimination;
> **Timaru-Paradis:** Title VII employment discrimination based on sex; Title VII hostile work environment based on sex; Title VII retaliation for opposing sex discrimination; assault; battery; intentional infliction of emotional distress; negligent infliction of emotional distress; and negligence.

(Doc. ## 1, 18).

## III. Motion to Strike Exhibits

SunTrust seeks summary judgment as to each claim asserted. (Doc. # 107). In connection with SunTrust's Motion for Summary Judgment, it tendered a number of exhibits.

Plaintiffs seek the exclusion of four of SunTrust's exhibits: "O," "S," "U," and "C". (Doc. # 143).

**A. <u>Deposition Summaries</u>**

Exhibit "O" is titled "Vescio's Allegations Against Sisson as Described in her Deposition" and is essentially SunTrust's counsel's two-paged single spaced summary of Vescio's deposition testimony. (Doc. # 107-18). Similarly, Exhibit "U" contains a summary of Timaru-Paradis' deposition testimony titled "Paradis' Allegations Against Sisson as Described in her Deposition." (Doc. # 107-24 at 20). SunTrust explains at the conclusion of the summary as to Timaru-Paradis that: "Given the page limitations for the Motion for Summary Judgment, SunTrust was going to simply provide this Court with the citations to the transcript in a footnote in the Motion. However, to aid this Court with finding the testimony in the transcripts, SunTrust created the instant summary which should contain every example in the transcript." (<u>Id.</u>).

Plaintiffs argue that the summaries submitted in Exhibits "O" and "U" are "a classic instance of counsel testifying, and would not be admissible at trial." (Doc. # 143 at 2). The Court agrees and determines that it is appropriate to strike the summaries. <u>See</u> <u>Dannebrog Rederi AS v. M/Y True Dream</u>, 428 F. Supp. 2d 1265, 1268 (S.D. Fla.

2005)(striking counsel's affidavit containing citations to the record and summaries of the evidence and noting that "the proper place for these references is in the Statement of Material Facts.").

This Court has carefully analyzed the depositions, declarations, and other evidence in this case and is well acquainted with the facts of the case. Certainly, counsel should summarize and analyze the evidence within the body of a Motion for Summary Judgment, but providing additional discussion of the evidence in the guise of an exhibit is a wayward attempt to exceed the page limits established for the efficient administration of justice. It is neither necessary nor appropriate for counsel to submit a summary of the allegations as an exhibit to a Motion for Summary Judgment. The summaries contained in SunTrust's Exhibits "O" and "U" are accordingly stricken.

**B. Handwritten Note**

SunTrust's Exhibit "S" is a handwritten facsimile coversheet "From: Marcia Vescio" submitted "To: E.E.O.C Tampa, Fl Wanita Smith," which includes a separate note in different handwriting stating "Raymond, This PCP has issues that are untimely and some close to being untimely. [I] will probably need to send out a 131 to protect her right. Thx."

(Doc. # 107-22). The author of the handwritten note about timeliness is not identified. Plaintiffs argue as to SunTrust's Exhibit "S" that:

> There is no evidence presented as to who wrote the note on the document, whether the author is an attorney, and what specific "issues" the author was referring to, and therefore, the statement runs afoul of Fed. R. Evid. 402 as irrelevant and Fed. R. Evid. 701 as improper opinion, and for those reasons also is not admissible at trial. The statements made are also out-of-court statements offered for the truth of the matter asserted, and are consequently hearsay pursuant to Fed. R. Evid. 801 not subject to any exception, and not admissible at trial pursuant to Fed. R. Evid. 802.

(Doc. # 143 at 3).

SunTrust asserts that the handwritten note featured on Exhibit "S" is admissible as a statement made by a party opponent because the EEOC itself identified the document in its initial disclosures. Federal Rule of Evidence 801(d)(2)(D) specifically excludes from hearsay any statement offered against an opposing party that "was made by the party's agent or employee on a matter within the scope of that relationship while it existed." See Fed. R. Evid. 801(d)(2)(D).

Here, SunTrust has not yet provided a proper foundation for the admission of Exhibit "S" as a statement by the EEOC, its party opponent, because it is not known whether the note

was made by an EEOC employee while acting within the scope of that employee's duties. See, e.g., Champ v. Calhoun Cnty. Emergency Mgmt. Agency, 226 F. App'x 908, 912 (11th Cir. 2007)(declining to consider at the summary judgment stage comments purportedly linked to the defendant in an employment discrimination case when the plaintiff failed to demonstrate that the comments were made during the scope of the declarant's employment).

SunTrust alternatively asserts that, even if the note concerning timeliness is hearsay, it falls within two widely recognized exceptions: records of a regularly conducted activity (Fed. R. Evid. 803(6)) and public records (Fed. R. Evid. 803(8)). However, as with SunTrust's contention that the note is the statement of a party opponent, SunTrust has failed to lay any foundation for its argument that the note is either the record of a regularly conducted activity or a public record.

For example, in order for the note to be admitted as the record of a regularly conducted activity, SunTrust must show that:

> (A) the record was made at or near the time by—-or from information transmitted by—-someone with knowledge;

> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

See Fed. R. Evid. 803(6).[1] SunTrust has not met these requirements at this stage of the proceedings.

Although SunTrust has failed to establish the admissibility of Exhibit "S," the Court declines to strike the Exhibit at this juncture and denies the motion to strike without prejudice as to Exhibit "S." During the course of trial, SunTrust may seek the admission of this document by laying a proper foundation for its admission as discussed above. However, the Court will not consider Exhibit "S" during the course of its summary judgment analysis as the proper foundation for its admission has not been provided.

[1] Federal Rule of Evidence 803(8), concerning the admission of public records, contains similar predicates designed to ensure the trustworthiness of the evidence.

**C. Undisclosed Witness Statement**

On July 25, 2013, Richard Fey signed a declaration concerning his banking history with SunTrust, including the statement that he altered a $340,117.86 check and tendered it to Timaru-Paradis for deposit, which she accepted. (Doc. # 107-6 at ¶¶ 6-7). Fey indicates that, during that time, he and his wife Jodi Fey were in the process of divorcing, and he scratched out the word "and" and wrote in the word "or" on the check between his name and Jodi Fey's name so that he could deposit the check into a separate account in his name only. (Id.).

Plaintiffs argue that Fey's declaration should be stricken because SunTrust did not properly disclose it during the course of discovery and in response to specific requests for production and interrogatories propounded on SunTrust by Timaru-Paradis. Specifically, Timaru-Paradis propounded an interrogatory requesting that SunTrust "identify each person to whom the Defendant has spoken about this case, list their names and the dates when the Defendant interviewed the witness, and indicate whether or not a statement, either written or oral, was obtained." (Doc. # 143-2 at 3). Likewise, in a request for production, Timaru-Paradis requested that SunTrust produce "copies of all complete

witness statements obtained from all witnesses spoken to by Defendant[] in reference to this matter.” (Doc. # 143-3 at 4).

On July 17, 2013, SunTrust responded to Timaru-Paradis’ interrogatories and provided a list of names that did not include Fey. (Doc. # 143-2 at 3). With respect to Timaru-Paradis’ request for production of witness statements, SunTrust objected to the term “witness statement” as vague, but, nevertheless, responded: “other than affidavits already produced, Defendant has not obtained written statements concerning any substantive matter signed by any witness in this case.” (Doc. # 143-3 at 4).

On July 28, 2013, counsel for Timaru-Paradis authored an email communication to counsel for SunTrust regarding SunTrust’s July 16, 2013, responses to discovery in an effort to resolve SunTrust’s objection to use of the term “witness statement” in Timaru-Paradis’ request for production. (Doc. # 143-4). Therein, Counsel for Timaru-Paradis clarified that she sought all witness statements, whether signed or unsigned, and requested confirmation as to the status of the witness statements. (Id.). On July 29, 2013, counsel for SunTrust responded to the email communication by stating, “at the time of the response, nobody submitted a written statement

to us concerning any substantive matter involving this litigation." (Doc. # 143-5 at 2).

Because Fey's declaration was not signed until July 25, 2013, SunTrust's July 17, 2013, discovery responses, omitting reference to Fey, may have been facially accurate. However, Plaintiffs contend that SunTrust had a duty to supplement with respect to Fey, especially after receiving counsel for Timaru-Paradis' email on July 28, 2013, requesting clarification. Plaintiffs did not learn of the existence of Fey's declaration until SunTrust filed its Motion for Summary Judgment on September 5, 2013.

Rule 23(e), Fed. R. Civ. P., provides in pertinent part:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process in writing; or (B) as ordered by the court.

Id.

In O'Donnell v. Georgia Osteopathic Hospital, 748 F.2d 1543, 1548 (11th Cir. 1984), the court summarized the duty to supplement as follows: "a party must amend a discovery answer if (1) she learns that her original answer is no longer true

and (2) a failure to amend amounts to a knowing concealment." Id. The Discovery Handbook for the Middle District of Florida adds that: "Rule 26(e). . . expressly provides that in many instances a party is under a duty to supplement or correct prior disclosures pursuant to Rule 26(a) or in discovery responses. Fairness and professionalism suggest a broader range of circumstances requiring supplementation." Middle District Discovery (2001) at I(D).

In addition, Rule 37(c)(1), Fed. R. Civ. P., provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."

SunTrust contends that it was not under a duty to supplement its discovery responses by disclosing Fey's declaration. In the alternative, SunTrust contends that its failure to disclose Fey's declaration was harmless because, "even if SunTrust had supplemented its response on July 25, 2013 to disclose that it had received a sworn declaration of Mr. Fey, Plaintiff would not have been able to depose Mr. Fey within the discovery period." (Doc. # 154 at 10). These arguments are unavailing. The Court determines that SunTrust

was under a duty to disclose the July 25, 2013, declaration, especially after counsel for Timaru-Paradis emailed counsel for SunTrust about the existence of witness statements on July 28, 2013. In addition, since all of these events transpired before the August 5, 2013, expiration of the discovery deadline, it appears that Plaintiffs could indeed have deposed Fey if his declaration was timely disclosed. The Court accordingly determines that Fey's declaration should be excluded under Rule 37(c)(1), Fed. R. Civ. P. However, the Court declines to impose fees and costs, as requested by Plaintiffs, for the discovery violation.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

Plaintiffs' Joint Motion and Incorporated Memorandum of Law to Strike Defendant SunTrust Bank's Exhibits "O," "S," "U," and "C," and in the Alternative, Motion to Exclude Exhibit "C" Pursuant to Federal Rule of Civil Procedure 37 (Doc. # 143) is **GRANTED** to the extent that SunTrust's Exhibits "O" and "U" are stricken; Exhibit "S" will not be considered during the Court's summary judgment analysis; and Exhibit "C" is excluded pursuant to Fed. R. Civ. P. 37(c)(1).

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of April, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record