UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, et al.,

    Plaintiffs,
v.                                    Case No. 8:12-cv-1325-T-33MAP

SUNTRUST BANK,

    Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant SunTrust Bank's Motion in Limine (Doc. # 142), which was filed on November 22, 2013. The EEOC, Delia Timaru-Paradis and Marcia Vescio (collectively "Plaintiffs") filed a Response in Opposition to the Motion on December 20, 2013. (Doc. # 161). For the reasons that follow, the Court denies the Motion.

**I.   Background**

    **A.   Marcia Vescio**

Marcia Vescio was employed at SunTrust's Gulf Gate branch from May of 2006, through November of 2009, as a Financial Services Representative. (Doc. # 18 at ¶¶ 26-27). Kenneth Sisson supervised Vescio and began working at SunTrust as a Branch Manager on November 17, 2008. (Vescio Decl. Doc. # 124-4 at ¶ 4; Doc. # 83-3 at 1). According to Vescio, Sisson

stared at her breasts every other day and trapped her between his groin area and the bank teller's counter by standing inches behind her. (Vescio Decl. Doc. # 124-4 at ¶¶ 15, 21). Vescio testified that Sisson stood so close behind her that she "was constantly afraid that one day his penis was going to touch [her] because he was always so close." (Id. at ¶ 26). In these situations, Vescio contends that Sisson spoke with his mouth so close to her body that she could feel his breath on her neck. (Id.).

Vescio also indicates that Sisson said, "I wish you had legs like that" comparing her to a bank customer who was also a Hooters waitress. (Vescio Dep. Doc. # 124-3 at 122). Vescio also alleges that while Sisson was touching her shoulder and standing uncomfortably close to her, he commented "just between me and you, I love Brazilians." (Vescio Decl. Doc. # 124-4 at ¶ 5). In addition, Vescio alleges that Sisson humiliated her by frequently directing her to say the word "peanuts" because, with her Brazilian accent, it sounded like she was saying "penis." (Id. at ¶ 23). Vescio testified that Sisson's conduct "always" brought her to tears. (Vescio Dep. Doc. # 124-3 at 282). Vescio's employment was terminated on November 17, 2009. (Doc. # 141-14 at 3).

2

### B. Heather Caldwell

Heather Caldwell began her employment at SunTrust's Gulf Gate branch on April 23, 2007, and was supervised by Sisson after he came to the branch. (Id. at 1). Caldwell alleges that Sisson made inappropriate comments to her, for instance, remarking after she lost weight from running that she was "losing" her "ass" and making comments about her legs as well as about Hooters waitresses. (Caldwell Dep. Doc. # 125-7 at 38, 41, 42, 150). He allegedly told Caldwell that she would get more accounts if she donned the attire of a Hooters waitress. (Id. at 149). Caldwell also contends that Sisson stared at her chest. (Id. at 47).

Caldwell spoke to Branch Manager Denise McDonald about Sisson's inappropriate, sexual behavior on a weekly or daily basis between January 2009, and August 2009. (Id. at 133-37). Caldwell also reported to Branch Manager Erin Hall that Sisson was using sexually inappropriate language. (Id. at 144-45). Finally, Caldwell reported "sexual harassment" to Area Manager Kevin Osborne, while "bawling her eyes out." (Id. at 124-28). Caldwell resigned from her position at SunTrust on August 14, 2009. (Doc. # 141-14 at 1).

**C. Jena Lynch**

Jena Lynch began her employment as a teller at SunTrust's Southgate branch in February of 2008. (Lynch Decl. Doc. # 124-2 at ¶¶ 4, 6). In January of 2009, Lynch was transferred to the Gulf Gate branch. (Id. at ¶ 6). Only 20-years old at the time, Lynch contends that Sisson, her 40-year old supervisor, made several offensive remarks to her, frequently stared at her in a sexual way, and, on a daily basis, would trap her behind the teller counter by standing less than two inches from her backside. (Id. at ¶¶ 9-14, 21-23, 26). She explained that she could not move forward because of the teller counter and she could not move backwards because she did not want to back up into his groin area. (Id. at ¶¶ 10, 12). During these times, Lynch contends that Sisson would speak with his face right next to hers so that she could feel his breath on her face. (Id. at ¶ 11). In contrast, Lynch remarked that Sisson stood a respectable distance from male employees. (Id. at ¶ 19).

Lynch testified that Sisson's conduct made her feel "sick at the prospect of going to work," "trapped," "cornered," "physically threatened," "extremely distressed, anxious, and embarrassed." (Id. at ¶¶ 11-13, 49). Lynch was terminated on July 10, 2010. (Doc. # 141-14 at 4).

4

### D. Delia Timaru-Paradis

Delia Timaru-Paradis began working for SunTrust as a Financial Services Representative in October of 2008, and was transferred to the Gulf Gate branch in September of 2009. (Timaru-Paradis Decl. Doc. # 126-1 at ¶¶ 3, 9). Sisson was Timaru-Paradis' supervisor and, according to Timaru-Paradis, he made inappropriate comments to her, for instance, suggesting that she wear a bathing suit to work to attract customers. (Id. at ¶¶ 14-15). She also alleges that he constantly made comments about her backside and remarked, after she gained weight: "You finally have some meat on your ass." (Id. at ¶ 38). According to Timaru-Paradis, he also asked her about her sex life "on a weekly if not daily basis," and stared at her breasts on an almost daily basis. (Id. at ¶¶ 25, 42). She also claims that Sisson threatened "maybe tomorrow you will not be back to your job" when she declined his invitation to go out to dinner with him. (Id. at ¶ 35).

Timaru-Paradis reported to her immediate supervisor Tunde Kakucs that Sisson would touch her inappropriately on a daily basis. (Id. at ¶ 26). According to Timaru-Paradis' declaration, Sisson "touch[ed]," "patt[ed]," "caressed," "grab[bed]" and "fondled" her body parts, including her hair, face, ears, neck, shoulders, back, arms, thighs, and

5

buttocks. (Id. at ¶¶ 25-33, 37-38). One evening in May of 2010, Sisson allegedly followed Timaru-Paradis to her car, "grabbed [her] forcefully and held [her] against [her] will." (Id. ¶ 59). He kissed her and she "had to shove him with all of [her] might to get away from him." (Id.).

Timaru-Paradis testified that Sisson's alleged verbal and physical harassment made her feel "dirty and disgusted," "horrified," "shocked," "extremely uncomfortable," and "physically threatened." (Id. at ¶¶ 29-30, 33, 38, 48).

When she reported Sisson's conduct to Area Manager Osborne, he allegedly remarked: "Quite frankly, you are frustrating me right now. And you should remember who . . . is giving you your paycheck." (Id. at ¶ 60). On July 7, 2010, Timaru-Paradis was terminated. (Doc. # 141-14 at 2).

## II. Complaint

On June 14, 2012, the EEOC filed a Title VII sexual harassment action against SunTrust on behalf of "charging parties" Timaru-Paradis, Vescio, and Lynch. (Doc. # 1). In August of 2012, Timaru-Paradis, Vescio, and Caldwell filed Motions to Intervene in this action with the assistance of separate counsel (Doc. ## 5-7), which the Court granted. (Doc. # 13). In granting the Motions to Intervene, the Court

directed that the EEOC and Intervening Plaintiffs file a consolidated complaint. (Id.).

On October 15, 2012, the EEOC, Lynch, Caldwell, Vescio, and Timaru-Paradis filed an Amended Consolidated Complaint (Doc. # 15), and thereafter filed a Second Amended Consolidated Complaint against SunTrust. (Doc. # 18). At this juncture, Caldwell has dismissed all of her claims with prejudice (Doc. # 122), and the parties have internally resolved a number of claims (Doc. # 103), leaving the following claims outstanding:

> **Lynch**: Title VII hostile work environment based on sex;
> **Vescio:** Title VII employment discrimination based on sex; Title VII hostile work environment based on sex; Title VII national origin discrimination; Title VII retaliation for opposing sex and national origin discrimination;
> **Timaru-Paradis:** Title VII employment discrimination based on sex; Title VII hostile work environment based on sex; Title VII retaliation for opposing sex discrimination; assault; battery; intentional infliction of emotional distress; negligent infliction of emotional distress; and negligence.

(Doc. ## 1, 18).

### III. **Motion in Limine**

SunTrust discusses several categories of evidence in its Motion in Limine; however, only one issue raised is ripe for adjudication. In this Order, the Court will address whether

7

Plaintiffs may introduce "me too" evidence regarding alleged harassment other SunTrust employees experienced during their employment.[1]

### A. Angela Rojas and Kathleen King

Angela Rojas, a former SunTrust employee, complained to Denise McDonald about perceived sexual harassment from Sisson in September of 2009, alleging specifically that Sisson threatened to take her into his office, close the door, and shut the blinds. (Rojas Dep. Doc. # 125-3 at 19, 31-32). She also complained that Sisson inappropriately referred to an eighteen year-old client, as well as other bank clients, as "hot." (Id. at 23, 25). Rojas also voiced her concerns to Shelley Jones in the Human Resources Department. (Id. at 33).

After Rojas complained about Sisson, Rojas indicates that she was retailed against by Sisson, and Rojas reported the alleged retaliation to Jones in February and March of 2010. Among other allegations, Rojas asserts that after she reported sexual harassment, Sisson called her supervisor, spoke badly about her, and falsely reported that she was

---

[1] The other issues SunTrust raises in the Motion (surveillance video footage, Timaru-Paradis' private dating life, and the testimony of Dr. Barbara Stein) have already been addressed in prior Orders of the Court and will not be repeated here.

sending problem clients to SunTrust's Gulf Gate branch rather than dealing with such problem clients herself. (Id. at 60-61). Rojas also claims that Osborne retaliated against her after she reported Sisson for alleged sexual harassment. (Id. at 62, 144).

Kathleen King purportedly complained about gender and age discrimination, however, the parties have not supplied the Court with a citation to deposition testimony or a statement from King regarding these allegations. At this juncture, the Court has not been apprised of the nature of King's gender and age discrimination allegations or the identity of the alleged harasser. In Plaintiffs' response to the Motion in Limine, Plaintiffs indicate that King complained about gender discrimination "in approximately March 2009" and thereafter assert that "King officially complained in August 2010 that Osborne retaliated against her." (Doc. # 161 at 5). In Shelley Jones' deposition, she describes a conversation between herself and King in which she told King that SunTrust's "hotline" was "designated for fraud, theft, and financial irregularity." (Jones Dep. Doc. # 127-2 at 131-32). It is Plaintiffs' contention that SunTrust failed to appropriately investigate King's discrimination and retaliation claims.

9

**B. Analysis**

In Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1286 (11th Cir. 2008), the plaintiff complained of racial discrimination and the trial court allowed other alleged victims to testify as to the racial discrimination that they allegedly experienced. The Eleventh Circuit upheld the admission of the "me too" testimony as follows:

> The "me too" testimony was admissible, under Rule 404(b), to prove the intent of Bagby Elevator to discriminate and retaliate. We have upheld the admission of coworker testimony in a sexual harassment context under Rule 404(b) to prove the defendant's "motive, intent, or plan" to discriminate against the plaintiff. Fed. R. Evid. 404(b); Phillips v. Smalley Maint. Servs., Inc., 711 F.2d 1524, 1532 (11th Cir. 1983). Goldsmith and coworkers Jemison and Thomas were discriminated against by the same supervisor, Farley, so the experiences of Jemison and Thomas are probative of Farley's intent to discriminate. Steber was involved in the termination decisions of all four individuals, so the experiences of Jemison, Peoples, and Thomas are probative of Steber's intent.
> There was also evidence that was probative of the intent of Bagby Elevator to retaliate against any black employee who complained about racial slurs in the workplace. The evidence about Peoples, Thomas, and Jemison suggested that any black employee of Bagby Elevator who complained about racial discrimination was terminated.

Id.

Here, Rojas' "me too" evidence is admissible because she complained about Sisson's alleged threat to take her into his

office, shut the door, and close the blinds and after complaining, she contends that she was retaliated against. Rojas' complaints of harassment and retaliation overlap temporally with the claims of the named Plaintiffs, and Rojas similarly asserts that Sisson treated her inappropriately. Although SunTrust correctly points out that Rojas resigned (as opposed to being fired as was the case with Timaru-Paradis, Lynch, and Vescio), the Court nevertheless determines that Rojas' testimony concerning (1) suffering from alleged sexual harassment, (2) reporting the harassment, and (3) allegedly being retaliated against is relevant to SunTrust's motive, intent, or plan to discriminate and retaliate against victims of discrimination, including sexual harassment. The Court also determines that Rojas' testimony is relevant to SunTrust's Faragher/Ellerth affirmative defense. See Walters v. Cent. Fla. Invests. Inc., No. 6:01-cv-1390-Orl-JGG, 2006 U.S. Dist. LEXIS 21197, at *8 (M.D. Fla. Mar. 28, 2006)("Evidence of McGriff's harassment of other women who worked under him may be admitted to show plan, motive, opportunity, intent, and pattern. Defendants' handling of Lawver's complaint also is relevant to the effectiveness of Defendants' anti-harassment policy and the

Defendants' affirmative defense raised under Faragher/Ellerth.").

The Court also considers, but ultimately rejects, SunTrust's contention that "me too" evidence concerning Rojas runs afoul of Rule 403, Fed. R. Evid. That Rule allows the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Although SunTrust asserts that allowing Rojas and any other non-Plaintiff to testify about alleged discrimination or retaliation could cause confusion or result in a "mini-trial," the Court disagrees. The Court is in a position to effectively and efficiently manage the testimony in this case to prevent needlessly lengthy questioning of non-parties or the "mini-trial" effect. In addition, counsel can avoid confusion as to the identities of the Plaintiffs during closing arguments by explaining that Rojas seeks no relief in this case.

The Court declines to exclude King's testimony at this time. SunTrust, the movant, has not provided specific information regarding King upon which the Court could make a

reasoned determination regarding the relevancy and admissibility of King's testimony.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

Defendant SunTrust Bank's Motion in Limine (Doc. # 142) is **DENIED** as detailed above.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 6th day of May, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record